**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 31, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

MARIO CABALLERO-ANAYA, a/k/a
Ernesto Martinez, a/k/a Ernesto Caballero,

    Defendant - Appellant.

No. 19-1034
(D.C. No. 1:18-CR-00035-REB-1)
(D. Colo.)

_____

**ORDER AND JUDGMENT***
_____

Before **LUCERO**, **KELLY**, and **PHILLIPS**, Circuit Judges.
_____

    Mario Caballero-Anaya appeals his conviction and sentence for illegal reentry

after removal under 8 U.S.C. § 1326(a)(1).  He argues that the government has failed

to establish his removal, an essential element of illegal reentry, because the date on

his warrant of removal was later than his physical removal.  He also appeals the

substantive reasonableness of his sentence.  Exercising jurisdiction under 28 U.S.C.

§ 1291, we affirm.

_____

    * This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# I

Caballero-Anaya has a long history of unlawfully entering and being removed from the United States. He was first ordered removed by an immigration judge on March 5, 1999, and was physically removed six days later. Between 1999 and 2016, he was removed six additional times: three times in 2000, and once each in 2002, 2004, and 2010.[1] Prior to each removal, ICE reinstated the original 1999 order of removal pursuant to 8 C.F.R. § 241.8.[2] From 2000 to 2014, Caballero-Anaya was convicted of illegal reentry four times.

After his removal in 2010, Caballero-Anaya was again found in the United States on December 2, 2014. As it had six times before, ICE reinstated the original 1999 order of removal, following the process required by § 241.8, and recorded the reinstatement on ICE Form I-871, "Notice of Intent/Decision to Reinstate Prior Order" ("Reinstatement Decision"). Based on the reinstated order, Caballero-Anaya was physically removed from the United States by ICE agents at the Nogales port of entry "via afoot [sic]" on or about June 16, 2016. This physical removal was recorded on the second page of ICE Form I-205, "Warrant of Removal/Deportation"

---

[1] Before 2003, removals were executed by the Immigration and Naturalization Service ("INS"). Since 2003, they have been executed by Immigration and Customs Enforcement ("ICE"). See Homeland Security Act of 2002, Pub. L. No. 107-296, § 4, 116 Stat. 2135 (2002).

[2] This section authorizes the removal of an alien who has illegally reentered the United States after "having been removed, or having departed voluntarily, while under an order of exclusion, deportation, or removal" by reinstating the prior order. § 241.8.

("Warrant"). An ICE official signed the first page of the Warrant on July 8, 2016, approximately 22 days after Caballero-Anaya's physical removal. This discrepancy lies at the heart of his appeal.

After his June 2016 removal, Caballero-Anaya was again found in the United States on December 6, 2017. As a result he was indicted for illegal reentry after removal in violation of 8 U.S.C. § 1326(a). He waived his right to a jury trial and was tried by the district court. At trial, Caballero-Anaya stipulated to all four elements of § 1326(a): (1) that he was an alien; (2) that he had been removed from the United States on or about June 16, 2016;[3] (3) that he knowingly re-entered the United States and was found in the District of Colorado on or about December 6, 2016; and (4) that he had not received consent of the proper legal authority to reapply for admission to the United States. He did not seek to withdraw his stipulations.

Instead, under Federal Rule of Criminal Procedure 29, Caballero-Anaya moved for a judgement of acquittal, arguing that the discrepancy between the date of his removal and the date on the Warrant negated the government's proof on the first element of § 1326(a)—that he had "been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding." He argued that § 1326(a) requires the prior removal to

---

[3] Before the district court, the government represented that Caballero-Anaya's removal had occurred on July 17, 2016, despite the I-205 form's indication that it occurred on June 16. The government does not address this issue on appeal. Because any discrepancy in the removal date does not affect the outcome of our analysis, we continue to refer to the date of removal as "on or about June 16, 2016," consistent with Caballero-Anaya's stipulation.

3

have been done "while an order of . . . removal is outstanding." Before the district court and on appeal, Caballero-Anaya confusingly mischaracterizes the Warrant as the relevant order of removal under § 1326(a). He also contends that an error in the Warrant voids the order of removal under § 1326(a) and otherwise makes the removal unlawful. The district court rejected this argument and found him guilty of illegal reentry after removal.

The district court calculated the Sentencing Guidelines range at 15 to 21 months but varied upwards because the "calculations simply do not reflect accurately or adequately the aggravated criminal history of the defendant." The district court sentenced the defendant to 48 months' imprisonment.

This appeal focuses on the 2016 removal, which is the sole basis for Caballero-Anaya's conviction. Although cast as a question of statutory interpretation, Caballero-Anaya's fundamental claim is that the date discrepancy in the Warrant invalidates the 2016 removal from serving as the "removal" required for a conviction under § 1326(a)(1). We disagree.

**II**

Caballero-Anaya challenges the district court's interpretation of § 1326(a). Questions of statutory interpretation are reviewed de novo. See United States v. Adame-Orozco, 607 F.3d 647, 652 (10th Cir. 2010). We also review de novo the district court's denial of Caballero-Anaya's motion for judgment of acquittal and his challenge to the sufficiency of the evidence underlying his conviction. See United States v. Cooper, 654 F.3d 1104, 1115 (10th Cir. 2011). In reviewing the sufficiency

4

of the evidence, we determine whether "viewing the evidence in the light most favorable to the Government, any rational trier of fact could have found the defendant guilty of the crime beyond a reasonable doubt." Id.

**A**

To convict Caballero-Anaya of a violation of § 1326(a), the government must prove: "(1) that the alien has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding; and (2) that the alien thereafter has entered, attempted to enter, or is at any time found in, the United States."[4] Adame-Orozco, 607 F.3d at 650-51 (quotation omitted).

Caballero-Anaya urges us to interpret the first element of § 1326(a)(1) to require the relevant removal or deportation underpinning the illegal reentry prosecution to have occurred while an order of removal is outstanding. The government responds that the statute requires an outstanding order only when the defendant is shown to have departed the United States, not when he or she has been "denied admission, excluded, deported, or removed." Resolution of this issue is unnecessary to decide this appeal. Even assuming Caballero-Anaya's interpretation is correct, he was removed while an order of removal was outstanding—the 1999 order which was reinstated in 2014.

---

[4] Caballero-Anaya challenges his conviction only with respect to the "deported or removed" element. He stipulated to the remaining elements at trial.

At trial the government presented uncontested evidence of reinstatement. When "an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date, . . . and the alien shall be removed under the prior order <u>at any time after the reentry</u>."  8 U.S.C. § 1231(a)(5) (emphasis added). Implementing this statute, 8 C.F.R. § 241.8 authorizes reinstatement of a prior removal order if an immigration officer determines that:  (1) the alien was subject to a prior removal order; (2) the alien is the same person who was removed under the prior order; and (3) the alien unlawfully re-entered the United States.  <u>Id.</u>  After the alien is given notice of and an opportunity to contest the determination, "the alien shall be removed under the previous order of exclusion, deportation, or removal in accordance with section [1231](a)(5) of the Act."  <u>Id.</u>

On appeal, Caballero-Anaya does not challenge the 1999 removal order or the 2014 Reinstatement Decision.  Moreover, he stipulated at trial to the admission of a certified copy of his "Alien" or "A" file, which records "transactions involving an individual as he/she passes through the U.S. immigration and inspection process." <u>United States v. Lopez</u>, 762 F.3d 852, 855 n.1 (9th Cir. 2014).  Caballero-Anaya's "A" file includes the 2014 Reinstatement Decision.[5]  This reinstatement authorized Caballero-Anaya's removal "at any time after the reentry."  § 1231(a)(5).

---

[5] The Reinstatement Decision shows that Caballero-Anaya did not object to the reinstatement and includes the immigration officer's findings required to reinstate the 1999 removal order.

6

Caballero-Anaya conflates the order of removal referred to in § 1326(a)(1) with the Warrant. His misapprehension does not create a statutory ambiguity that requires resolution. "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997). The Immigration and Nationality Act "defines 'order of removal' as an administrative order concluding that an alien is removable or ordering removal." Luna-Garcia v. Holder, 777 F.3d 1182, 1184 (10th Cir. 2015) (citing 8 U.S.C. § 1101(a)(47)(A)).[6] A reinstated removal order is a final order of removal. See id. at 1185. Further, under § 1231(a)(5), an order of removal is reinstated from its original date. The 2014 Reinstatement Decision reinstated Cabellero-Anaya's original order of removal from its 1999 date. Because Caballero-Anaya was removed on June 16, 2016, while the reinstated removal order was outstanding, we do not need to determine if § 1326(a)(1) requires an outstanding order of removal only for departures.

**B**

Clinging to his argument that the date discrepancy on the Warrant nonetheless invalidates the 2016 removal, Caballero-Anaya argues that the "material factual inconsistenc[y]" between his removal and the date on the Warrant requires us to

---

[6] Although the "statutory definition refers to 'order of deportation[,' t]he terms 'order of removal' and 'order of deportation' are coterminous when interpreting the statute." Id. at 1184 n.5 (citation omitted).

7

conclude that the government has failed prove his prior removal—a requisite element of § 1326(a)(1). He further contends that because ICE's implementing regulations require the issuance of a warrant and its execution, the deficient warrant in this case is insufficient to show an actual removal.

His reliance on cases holding that a prior removal may be shown by an executed warrant is misplaced. Those cases recognize that there are many ways for the government to prove the required element of a prior removal, including a warrant; they do not stand for the proposition that a warrant is necessary. See United States v. Landeros-Mendez, 206 F.3d 1354, 1357-58 (10th Cir. 2000) (together with testimony of INS officers who expelled the alien, warrant is sufficient proof of prior removal); United States v. Anaya, 117 F.3d 447, 449 (10th Cir. 1997) (conviction sustained on basis of admitted warrant and testimony of agents that warrant was not signed until alien had been deported); United States v. Quezada, 754 F.2d 1190, 1193-95 (5th Cir. 1985) (warrant admissible and sufficient to satisfy the arrest requirement of the then-applicable version of § 1326);[7] cf. United States v. Lopez, 762 F.3d 852, 865 (9th Cir. 2014) (holding that authenticated verification of removal by officer removing alien is sufficient to prove prior removal). In Landeros-Mendez, the defendant challenged the sufficiency of the evidence of his prior removal because the

---

[7] Section 1326(a)(1) was amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA). See Pub. L. No. 104-208, 110 Stat. 3009, 3009-618 (1996). "Pursuant to this amendment, the phrase 'arrested and deported or excluded and deported' was replaced with 'denied admission, excluded, deported, or removed.'" Landeros-Mendez, 206 F.3d at 1358 n.4.

8

government had not produced the order of removal, and instead relied on (1) a warrant, (2) its records of the defendant's prior physical removal, and (3) testimony of two immigration agents that the warrant was prepared after the order of removal was finalized. 206 F.3d at 1357. The court held that the government was not required to introduce an order of removal to establish a violation of § 1326 and determined that the other evidence was sufficient to sustain the conviction. Id. at 1357-58.

In this case, Caballero-Anaya contends that the fact he was removed 22 days before the Warrant was signed invalidates his actual removal on or about June 16, 2016—a removal conducted pursuant to the reinstated order of removal and witnessed by the officer signing on page two of the Warrant. He claims that the date discrepancy alone results in a failure of proof of his actual June 16, 2016 removal. Construing his "failure of proof" allegation as a challenge to the sufficiency of the evidence underlying his conviction, we conclude that a reasonable jury could have found him guilty beyond a reasonable doubt based on the evidence presented at trial.

Critically, Caballero-Anaya neglects to account for his stipulation that he "was deported from the United States on or about June 16, 2016." A criminal defendant may stipulate "to elemental facts" and thereby waive the right to a trial on those elements. United States v. Mason, 85 F.3d 471, 472 (10th Cir. 1996). The "very nature of a defendant's waiver is that it frees the government from the obligation to present any evidence regarding the element in question." United States v. Smith, 472

9

F.3d 752, 753 (10th Cir. 2006) (emphasis omitted).  Further, a factfinder "does not have the lawful power to reject stipulated facts."  Mason, 85 F.3d at 473.

When we consider his stipulation, we cannot conclude that no reasonable jury could find Caballero-Anaya guilty beyond a reasonable doubt.  This elemental stipulation augmented the evidence in his "A" file, which contained the 1999 removal order, the 2014 Reinstatement Decision, and the Warrant recording the circumstances of his 2016 removal.  Based on this evidence, the district court found that the evidence established beyond a reasonable doubt "that pursuant to an extant, valid, and viable order of removal, the defendant had been deported or removed from the United States on or about June 16, 2016."  We decline to hold that an alleged clerical error on the Warrant negated the legal effect of Caballero-Anaya's stipulation or the overwhelming evidence of his removal in 2016.

We find further support for our conclusion in United States v. Mendez-Casillas, 272 F.3d 1199 (9th Cir. 2001), which upheld a conviction for illegal reentry even though the warrant of deportation was unsigned.  Id. at 1205.  After determining that the arrest or warrant requirement in the version of § 1326 in force at the time was intended to provide notice, the Ninth Circuit held that "the missing signature did not vitiate the 'arrest' element of Mendez-Casillas's § 1326 conviction."  Id.  The court also rejected Mendez-Casillas' contention that "the defective warrant effectively means that he was never validly 'deported' for § 1326 purposes," id. at 1206, an argument similar to Caballero-Anaya's.  Interpreting United States v. Mendoza-Lopez, 481 U.S. 828 (1987), the Ninth Circuit rejected "the view that a deportation is

10

an element of the offense defined by § 1326 only if it is 'lawful.'" It held that "only if the claimed illegality of deportation rises to the level of a due process violation—specifically, the lack of meaningful judicial review of the INS administrative proceeding—may the deportation not be used to establish an element of a criminal offense." Mendez-Casillas, 272 F.3d at 1206 (citation and quotation omitted).

Caballero-Anaya makes no argument that the alleged error rises to the level of a due process violation. In any event, given Caballero-Anaya's elemental stipulation and lack of challenge to the original 1999 removal order or its 2014 reinstatement, there is no due process violation. Accordingly, we affirm his conviction for illegal reentry under § 1326.

### III

Caballero-Anaya also challenges the substantive reasonableness of his sentence. We review such claims for abuse of discretion. United States v. Smart, 518 F.3d 800, 805 (10th Cir. 2008). "[W]e afford substantial deference to the district court, and determine whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a)." United States v. Balbin-Mesa, 643 F.3d 783, 788 (10th Cir. 2011) (quotation omitted). Under this deferential standard of review, "we deem a sentence unreasonable only if it is arbitrary, capricious, whimsical, or manifestly unreasonable." United States v. Gantt, 679 F.3d 1240, 1249 (10th Cir. 2012). Where, as in this case, the court varies from the Sentencing Guidelines, we "consider the extent of the deviation but give due deference to the district court's decision that

11

the § 3553(a) factors, on a whole, justify the extent of the variance." United States v. Huckins, 529 F.3d 1312, 1317 (10th Cir. 2008) (quotation omitted).

At sentencing, the district court varied upward from the Guidelines range of 15 to 21 months[8] and imposed a sentence of 48 months' imprisonment. Caballero-Anaya argues that his sentence is substantively unreasonable because: the district court relied upon factors already included within the Guidelines, the incarceration of unlawful immigrants for immigration violations unreasonably uses taxpayer dollars, and the upward variance created unwarranted sentencing disparities.

In imposing its sentence, the district court varied upward because the "guideline calculations simply do not reflect accurately or adequately the aggravated criminal history of the defendant." It focused on Caballero-Anaya's more than 25-year "history of violating the immigration laws of this country," coupled with his history of "numerous other convictions unrelated to immigration" while in the United States, including "not less than four convictions for driving under the influence and aggravated motor vehicle theft."

The court also addressed the need for deterrence, respect for the law, the danger to the community, and the characteristics of the defendant. For the court, the need for deterrence required the upward variance, given Caballero-Anaya's four prior

---

[8] The district court sustained Caballero-Anaya's objection to considering one prior felony conviction for purposes of increasing the offender characteristics, resulting in the corrected applicable Guidelines range of 15 to 21 months. Even after the corrected guideline calculation was established, the court twice reaffirmed its sentence and articulated its rationale that this sentence was appropriate even with the reduced Guidelines range.

12

federal criminal prosecutions, eight prior removals, and one prior voluntary departure after illegal entry. The court explicitly considered the escalating periods of incarceration for each subsequent illegal reentry: 45 days, six months, 15 months, and 21 months. It viewed this pattern, augmented by Caballero-Anaya's immediate reentry, or reentry so quickly that he was still subject to court-imposed supervised release, as demonstrating his disregard for the laws of the United States and the inadequacy of the Guidelines range.

The court also considered the danger to the community posed by Caballero-Anaya's continued pattern of illegal acts, including repeated instances of driving under the influence. Finally, the court explicitly based its upward variance on the need "to reflect the seriousness of this offense" in context, to promote respect for the law, to deter the defendant and 'those similarly situated and inclined," and to provide just punishment to the defendant. This articulation directly related to specific § 3553(a) factors: the need for deterrence, the nature of the offense and characteristics of the defendant, the danger to the community, and the need to provide just punishment for the crime. See § 3553(a)(1)-(2).

"District courts have broad discretion to consider particular facts in fashioning a sentence under 18 U.S.C. § 3553(a), even when those facts are already accounted for in the advisory Guidelines range." United States v. Alapizco-Valenzuela, 546 F.3d 1208, 1222 (10th Cir. 2008). We have previously determined that a propensity to return and "near-immediate" return—both of which are amply demonstrated in this

13

record—support a district court's decision to vary upwards. See United States v. Valtierra-Rojas, 468 F.3d 1235, 1241 (10th Cir. 2006).

Caballero-Anaya also contends that the upward variance creates an unwarranted sentence disparity between similarly situated defendants. His focus on this factor is misplaced. "[Section] 3553(a)(6)'s consideration of unwarranted sentence disparities is but one factor that a district court must balance against the other § 3553(a) factors in arriving at an appropriate sentence." United States v. Martinez, 610 F.3d 1216, 1228 (10th Cir. 2010) (citation omitted). Moreover, "[d]isparate sentences are allowed where the disparity is explicable by the facts on the record." Id. (quotation omitted). In this case, the court considered a number of § 3553(a) factors pertaining to Caballero-Anaya's history and characteristics and the nature and seriousness of the offense. These factors counterbalanced § 3553(a)(6)'s concern for sentence disparities. Under our deferential standard of review, we do not review the weight a district court assigns to each of the factors or the balance it ultimately strikes among them. See id. at 1229. Instead, giving due deference to the district court's decision that the § 3553(a) factors, on the whole, justify the extent of the variance, we affirm "[a]s long as the balance struck by the district court among the factors set out in § 3553(a) is not arbitrary, capricious, or manifestly unreasonable." Id. at 1229 (quotation omitted). We conclude that the district court's sentence was not unreasonable.

**IV**

Caballero-Anaya's conviction and sentence for illegal reentry are

**AFFIRMED**.

Entered for the Court


Carlos F. Lucero
Circuit Judge